### 23622

Audrey O'SHEA, Appellant v. Richard C. LESSER, Katherine C. Lesser, Bernard Drowne, Alva Walker, Jr., Joseph Oppenheimer, David Christmas, Philip Gore, and Broadus L. Thomasson, General Partner of Thomasson Properties, A S.C. Limited Partnership, Respondents.

(416 S.E. (2d) 629)

Supreme Court

12

6

*J. Thomas Mikell*, Beaufort, *for appellant.*

*George E. Mullen,* Hilton Head Island, *for respondents Richard C. Lesser* and *Katherine C. Lesser.*

*W. Brantley Harvey, Jr.,* Beaufort, *for respondents Bernard Drowne, Alva Walker, Jr., Joseph Oppenheimer, David Christmas, Philip Gore,* and *Broadus L. Thomasson.*

Heard Feb. 19, 1992; Decided Apr. 6, 1992.

Reh. Den. May 6, 1992.

HARWELL, Chief Justice:

This is an action for breach of a restrictive covenant. Appellant Audrey O'Shea alleges that the master-in-equity committed various errors. We affirm.

## I. FACTS

Appellant and respondents Richard C. Lesser and Katherine C. Lesser (the Lessers) are neighbors in Fairway Club Subdivision on Fripp Island. Fairway Club is a planned residential development consisting of thirty long, narrow lots fronting a golf course. The developer of Fairway Club, respondent Broadus Thomasson (the developer), offers three basic house designs, each of which features a patio wall that comprises one side of the house. The patio wall contains no windows, and extends about twelve feet beyond the house toward the golf course, creating a sort of privacy wall. The wall on the opposite side of the house contains windows that face the patio wall side of the home on the adjacent lot. Patio walls are intended to protect the privacy of each owner while allowing the developer to construct the houses more closely together.

The remaining respondents are all members of an architectural review board (the Board) appointed by the developer in accordance with a covenant providing that:

> No building, wall, fence, swimming pool, or other structure shall be commenced, erected, or maintained upon the common properties, nor shall any landscaping be done, nor shall any exterior addition to any such existing structure or change or alteration therein, be made until the plans and specification therefor showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to the harmony and compatibility of its external design and location, with the surrounding structures and topography, by Fripp Island Development Corporation and its duly appointed agents.

In 1989, the Board granted the Lessers permission to enclose an open deck that adjoins their home, and to construct a new open deck next to the newly-enclosed deck. Prior to construction, appellant could see past the end of her patio wall into a section of the Lessers' yard. Appellant's view of the Lessers' yard is now partially obstructed by the new structure. In addition, the Lessers can see around appellant's patio wall into a portion of appellant's home from the end of their addition. Appellant asserts that as a result of the Lessers'

ability to see into her house, she has been forced to change her lifestyle to avoid being watched by the Lessers.

Appellant brought this action, alleging breach of contract, fraud, breach of contract accompanied by a fraudulent act, and negligence, and seeking a permanent injunction requiring the Lessers to remove the extension, actual damages, punitive damages, and attorney's fees. The master-in-equity, after dismissing all causes of action except breach of contract, found for respondents.

## II. DISCUSSION

To determine our scope of review, we must address appellant's contention that the master-in-equity erred in concluding that appellant sought legal rather than equitable relief. We disagree.

At the conclusion of appellant's case-in-chief, the master-in-equity requested appellant to elect between an equitable remedy for injunction, or a legal remedy for damages. Appellant elected to pursue monetary damages. Appellant now contends that seeking monetary damages did not transform the case from an equity case of a case at law, because an equity court can order both specific performance and damages.

This Court has ordered specific performance and, at the same time, ordered a defendant to pay special damages resulting from breach of contract. *See, e.g., Butler v. Schilletter*, 230 S.C. 552, 96 S.E. (2d) 661 (1957). We have emphasized, however, that special damages are ancillary to the equitable remedy of specific performance, and are distinct from general damages recoverable at law for breach of a contract. *Id.* Here, the record is clear that appellant chose to seek general damages for loss of view and invasion of privacy resulting from respondents' alleged breach of covenant. We hold that the master-in-equity did not err in concluding that appellant sought legal rather than equitable relief.

Because this is an action at law, tried without a jury, our scope of review on appeal mandates that we will not disturb findings of fact of the judge unless there is no evidence reasonably supporting the judge's findings. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976).

Appellant next asserts that the Board owed a fiduciary duty to appellant, and that the Board breached that duty. We disagree.

A fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence. *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 358 S.E. (2d) 150 (Ct. App. 1987). The appellant claims that the Board should have notified her that the Lessers had submitted plans for a modification, and allowed her to comment on the proposed plans prior to the Board's deciding whether to grant the Lessers permission to build. Appellant also asserts that the Board had a duty to retain an architect to render an opinion as to whether the Lessers' proposed renovations were "in harmony and compatibility . . . with the surrounding structures and topography" of Fairway Club.

We have never imposed the high standard of fiduciary duty on planned community organizations, such as the Board, which are vested with the discretion to ensure that proposed modifications to residential property enhance the entire community.[1] Instead, under the correct standard, the Board has a duty to exercise judgment reasonably and in good faith. *See Palmetto Dunes Resort v. Brown*, 287 S.C. 1, 336 S.E. (2d) 15 (Ct. App. 1985). We hold that the master-in-equity did not err in finding that the Board did not owe appellant a fiduciary duty.

Appellant next asserts that the Board acted unreasonably, in bad faith, and arbitrarily or capriciously. We disagree.

Appellant complains that the master-in-equity made a conclusory statement that the Board did not arbitrarily, and that had the master-in-equity made specific findings, he would have been compelled to find that the Board did in fact act arbitrarily and capriciously. Appellant contends that the Board should have considered the impact of the Lessers' proposed extension on appellant's privacy and on her view across the Lessers' property. Appellant urges that the Board should

---

[1] The Fripp Island Covenants grant the Board "sole and uncontrolled discretion" to approve proposed plans in Fairway Club.

have requested input from other residents of Fairway Club regarding the Lessers' proposed modification. Appellant also contends that the Board should have notified appellant as to the date the Board would consider the Lessers' application.

The Board holds regularly scheduled, public meetings at which community members may voice their opinions regarding applications submitted to the Board. Appellant's brother attended the meeting at which the Lessers' proposed plans were discussed and made the Board aware of appellant's concerns. Moreover, appellant contacted individual members of the Board to complain about the Lessers' extension. As a result, several Board members visited the site to verify their approval of the Lessers' plans. We do not perceive that the Board's failure to elicit an opinion from appellant or other community members regarding the Lessers' proposed plans constitutes, under these facts, unreasonableness or bad faith.

Appellant additionally contends that the Board did not follow its own written procedures in reviewing the proposed improvements to the Lessers' residence. Members of the Board testified that strict adherence to the procedures was not necessary in this case because they already were familiar with both appellant's property and the Lessers' property. Further, we can discern no evidence that the Lessers received preferential treatment as a consequence of the technical violations about which appellant complains.

Appellant also asserts that Board members lack education and experience, and are incapable of rendering a reasonable opinion regarding a proposed plan's potential for harmony and compatibility with the surrounding structures and topography at Fairway Club. Although people reasonably may differ as to whether an addition is aesthetically pleasing, the Board has been vested with the sole authority to make this judgment. The Board is constrained only to act reasonably and in good faith. We find that the master-in-equity did not err in finding that the Board acted reasonably, in good faith, and not arbitrarily or capriciously.

■ Appellant next asserts that the Lessers breached a covenant which prohibits the creation of a view into appellant's house. We disagree.

The covenant which appellant contends prohibits the Lessers from creating a view into her residence reads:

> The dwelling unit . . . shall be constructed so that neither the patio wall nor the dwelling unit provides any window or view openings looking into or over-viewing the adjacent lot and provides no access way or entry way into said adjacent lot.

Appellant contends that this covenant prohibits the construction of any window on any side of a "dwelling unit" which might allow one neighbor to look into an adjacent lot. Members of the Board testified, and the master-in-equity held, that the intent of the covenant was to ensure that no windows or view openings were constructed on the patio wall side of a residence in Fairway Club. The master-in-equity reasoned that because the Lessers did not place windows in the patio wall side of their residence, they did not breach the covenant.

When language of a restrictive covenant is equally capable of two or more constructions, that construction will be adopted which least restricts the property. *Hamilton v. CCM, Inc.,* 274 S.C. 152, 263 S.E. (2d) 378 (1980). We find that the master-in-equity did not err in finding that the Lessers did not breach a covenant prohibiting the creation of a view into appellant's house.

Appellant finally urges that the master-in-equity's order does not conform to the findings of fact. Appellant asserts that the master-in-equity erred in finding that appellant suffered no damages even though (1) the Lessers can see into her home, thereby allegedly invading her right to privacy, and (2) the improvements to the Lessers' residence allegedly diminish her right to a view. We disagree.

This Court has defined invasion of privacy as:

> The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Meetze v. The Associated Press,* 230 S.C. 330, 95 S.E. (2d) 606 (1956). Where, as here, a plaintiff bases an action for invasion of privacy on "intrusion," bringing forth no evidence of public disclosure, it is incumbent upon him to show a blatant and shocking disregard of his rights, and serious mental

or physical injury or humiliation to himself resulting therefrom. *Rycroft v. Gaddy*, 281 S.C. 119, 314 S.E. (2d) 39 (Ct. App. 1984).

The fact that the Lessers can see into a portion of appellant's home is not so blatant or shocking as to constitute an invasion of appellant's right to privacy. People who live in organized communities must of necessity suffer some inconvenience and annoyance from their neighbors and must submit to annoyances which are the consequence of the reasonable use of property by others. *Winget v. Winn Dixie Stores, Inc.*, 242 S.C. 152, 130 S.E. (2d) 363 (1963).

As to the diminution of appellant's view, this State recognizes no prescriptive easement of view. *Hill v. The Beach Co.*, 279 S.C. 313, 306 S.E. (2d) 604 (1983). As to any easement of view that may arise from the common scheme of development, the master-in-equity found that each home in Fairway Club is designed and situated on each lot so as to draw each owner's vision in a particular direction toward some desirable view, such as an inlet, lagoon, or fairway. Appellant's home is situated so that her attention is drawn away from the Lessers' home. Appellant's view of the golf course is not impaired by the extension to the Lessers' residence. Accordingly, we find that the master-in-equity's order conforms to his findings of fact, and that he did not err in finding that appellant suffered no damages.

We hold that the master-in-equity's findings are reasonably supported by the evidence. The order of the master-in-equity is

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.